Spectrum Healthcare Resources 2012-5037 Mr. Weckstein May it please the court, I'm Ken This case involves 14 issues, no actually I'm going to talk about 3 issues your honor. The first issue is the waiver issue and that is where the Court of Federal Claims has extended the Doctrine in Blue and Gold way beyond what it says and what it was intended to do to preclude consideration at the Court of Federal Claims of about half of the case raised by the U.S. Department of Health and Human Services. The second issue is that there was a violation of 48 CFR 15.306E in favoring spectrum in discussions that was conducted by the Army. The third is that there was an arbitrary evaluation of factor 1C that was a compensation factor. So starting with the waiver issue, here the Army and the court never considered several factors and advantages that were given to spectrum in this evaluation. The first has to do with the injunction that was entered by the court. That's at A-16 of the record where the court said that the, and this was, there were 2 contracts here. The first one was the contract 6 where it was ordered to spectrum and then that was enjoined later. And in the injunction the court said the parties must suspend any related activities that may result in additional obligations being incurred by the United States under the contract. The judge at A-1715 explained what that meant and he said that what the Army did was not consistent with his intent and at A-1716 he said the idea is that the prior contract is gone, done, finished out. That's at lines 5 and 6 of that page. Contrary to that, the government issued stop work extension orders and that's at A-1565 to 1569 which extended the stop work orders. So contrary to what the injunction said and what the judge said his intent was, the contract 6 was not stopped. It wasn't over, it was continued. And spectrum interpreted that exactly consistent with those extensions of the stop work order and they submitted requests for equitable adjustments. Those are at A-1695 to 1701 and I'm not talking about the specifics on those pages because we do have a confidentiality order here so I can't mention certain things. But at page A-1700 it says what spectrum is using the money for from these REAs and it has to do with keeping them in the competition for this contract 12 procurement and getting monies for that. None of that was addressed by the court and it was deemed to be waived, the advantage that accrued to spectrum as a result of the Army's violation of the first injunction here. Secondly, the Army shared information with spectrum about government furnished equipment that was beyond that set forth in the RFP and that's at A-1222 and essentially we have an RFP that says this is the government furnished equipment, that's what spectrum got, that's what CRA got. During its dealings with spectrum, the Army says well this is changed and the list is different on government furnished equipment. The Army never amended the RFP to tell CRA, the other competitor that that had happened. So there was not a level playing field on that. Thirdly, the government Army pre-approved spectrum's facility design plans which was a required submission under the RFP, that's under A-1220 and rather than accepting the transition plan proposed by spectrum, they worked closely with spectrum to develop that transition plan, that's at A-1213. So, CRA knew that spectrum was performing the transition work and they had done three months of transition, but spectrum was selected based on spectrum's proposal, not based on some different proposal where the government and Army was going to go back to spectrum and say hey, we don't like your proposal that much and we'd like you to make some changes to these things. And then spectrum says okay, we'll make those changes and then those same people who told spectrum to make those changes get spectrum's proposal which says hey, we made some changes that you wanted us to make and those are great and the same people evaluate that and say oh yeah, those are great changes, we're going to give you high marks for that. Blue and Gold is a simple case with a simple holding. It said if there's a patent ambiguity, a patent error in the solicitation, you have to protest that patent error before the due date for receipt of proposals. You cannot lie and wait and then see whether you're going to win and lose and then come back later and say make the same objection that well, and it involved the Service Contract Act in that case and in that case Blue and Gold understood because it was the incoming contract that the Service Contract Act was not in its contract. It understood that the prospectus that came out did not include the Service Contract Act. It understood that there was no wage determination in the prospectus for this. It knew all those things and then it bid. It didn't get the award. Interesting contract it had to do with concession contracts on the island of Alcatraz and then they came back after and they said well, we lost but you know the service contract really should have been considered for the incumbent as part of that. The court reasonably said no, you knew that it wasn't in before and you should have raised that and they relied on a GAO rule at 4 CFR 21.2 which said that if you know something before the solicitation, proposals are due, you're bound to raise that. That same rule at 4 CFR 21.2 at A2 says that you're prohibited from filing protests before the debriefing except for those ones that are based on things that are apparent from the solicitation. You can't do it at all. Here, the Department of Justice and the Army and Spectrum are relying on blue and gold in a way that it was not intended. Did CRA ever identify any specific information that Spectrum had for the information and do this pre-award? They didn't know. CRA only found out these items after award. So that's what's the site to A1222 where it learned about the government furnished equipment. The site to A1220 where it learned about the pre-approval of the facility design. A1213 where they learned for the first time, this is a year after the fact, about the development of the transition plan where they worked hand in hand with the government. And of course the injunction was not violated until months after the proposals were due. So CRA obviously could not know that the Army was going to violate the injunction in a way that gave it a competitive advantage to Spectrum. So there was nothing to protest. What date are we talking about? I'm looking at your letter of October 14. I'm sorry? I'm looking at the letter of October 14. Okay, so the letter of October 14 precluded, preceded proposals which were due I think sometime around the end of October or the beginning of November. And that's the letter that... Is that A468? Yes, 468 dated October 14, 2010. It raises two issues. It says, hey government, CRA's proprietary information has gone to Spectrum as part of this transition effort. Give us their proprietary information, level playing field. That issue is not before the court. That's not something we're talking about. The second issue, it says, well they didn't have a three-month head start. Presumably they've already been paid for performing work that was and will be required by the solicitation. Presumably. We didn't know, but we had some info. We said, well they're performing some sort of transition work, so presumably you're paying them. And that amounts to a price subsidy. So tell us how you're going to address this. And the Army never... On the issue of waiver, that's really not an objection. That says we look forward to hearing from you and we're just letting you know we're still interested. Correct. And they never got a response at all. So it's not that they came back and they said, CRA, we're not going to amend the RFP to address this issue. We're not going to violate this injunction. We're not going to give extra government furnished equipment information to them. We're not going to do this. Those issues, not only were they not raised... But then according to you, they did it, right? They did consider... They gave those advantages. And you didn't object. That's the waiver. No, that's not the waiver. They did the... They gave... The judge's opinion says that we had to object before proposals were submitted in November. We did not learn about these things until February of the next year, October of the next year. It was only as part of the production of the administrative record that we learned about it. It was a year later. It wasn't even a glint in our eyes. We couldn't even have rank speculation to file a protest before a proposal due date. There was nothing to waive. They're saying that we waive based on facts we didn't know, we couldn't know, and events that didn't happen, and obligations that the government was obligated to take to mitigate organizational conflicts of interest under FAR 90.505 that weren't obligated by the government until after proposals were submitted and evaluated, which was nine months down the road. If you wanted to save some time, five minutes, you could... Yes. Well, there's a couple of other points, Your Honor. This case, Judge Wallach recently was on a panel which addressed this in DRG, an improper extension of blue and gold, where the panel told justice that this would... in discussing blue and gold, that that, in this case, it was decided six days ago, on August 2nd, that the Department of Justice should not lard their briefs on appeal with thinly grounded jurisdictional objections to this court or the trial forum, considering the particular appeals on the merit. This is sort of the same thing. You're opening the floodgates of litigation where you're telling contractors that if you can dream it before a proposal due date, you better protest it then, or else you're precluded from doing it. The other issues are FAR at 15306E says that there's limits on exchanges. You can't favor one offer over another. Here, under Factor 1C, both offers originally were rated good and had strengths. CRA had more strengths. In the new proposals, they both revised their proposals. They were both reduced to a lower score. All of their strengths were eliminated. Government went back to Spectrum and they said, hey, did you really eliminate those strengths? Spectrum said, no, we didn't eliminate them, so they increased their rating back up again. Never went to CRA and gave them that same opportunity to say, did you eliminate those strengths? In fact, we did not eliminate those strengths. Secondly, there was a weakness identified for Spectrum under Factor 4. The government went to Spectrum. They said, explain yourself. Spectrum had the opportunity. There was a weakness for CRA under Factor 1B. Government went to CRA, did not go to CRA, so CRA did not have that same advantage. The last point is the arbitrary evaluation under Factor 1C, compensation. This is pretty straightforward. The government found that CRA's compensation was higher in 23 of 36 job categories than was Spectrum's compensation. The Army found that the benefits were equivalent for the two of them. So, according to the Army, CRA offered higher compensation and equivalent benefits. There's also an REA in the proposal from Spectrum where they essentially admitted that they needed to offer enhanced compensation and they did not do that. It's an admission that what they proposed was inadequate. Despite that, the government arbitrarily rated the compensation of Spectrum higher than that of CRA. Thank you. Ms. McCarthy. May it please the Court, Your Honor? The job part below correctly applied Bloom-Gold, which is not even an extension as CRA contends. Bloom-Gold is squarely on all fours for this case. Bloom-Gold, as CRA's counsel indicated, involved an RFP that did not make clear that the Service Contract Act would apply. Similarly, in this case, the RFP clearly did not provide, as CRA requested, that the specific issues raised at Appendix Page 468. CRA specifically requested that the RFP be amended to reflect these issues related to the alleged OCI. I assume that we were to find that an OCI exists in this case. Would it be a significant OCI or an insignificant? Well, to the very limited extent that there was information discovered after the fact, which we maintain below, as CRA correctly points out in its reply brief, our position was that there was potentially information regarding an OCI that could have become available to CRA after award, but it hasn't presented any hard facts here. I mean, all it's got is what's listed on Page 8 of its reply brief, which are not hard facts. They're common relationships endemic to any incumbent contractor, which, incidentally, the irony of this appeal, of course, is that CRA is a long-time incumbent and had no objection to the RFP not making any compensation for the fact that it had incumbency. It had a significant advantage as an incumbency going into this procurement. And on Page 8 of its reply, as this Court made clear in PAI, it's a mere relationship. The mere incumbency does not require the agency to compensate the non-incumbent. So in Page 468, CRA clearly asked for the RFP to be amended to reflect its concerns. The Army amended the RFP twice after this letter. It did not accede to any of these requests, and therefore, CRA was clearly on notice of its obligation to protest. To the extent that CRA mentions DRG, not to be picky, we did not receive a Rule 28J letter. Fortunately, because of my involvement in the matter, I'm familiar with the case, so if the Court wants to... Our position is that, of course, DRG involved in EJIP appeal, which the Court addressed. The main merits issue of the EJIP award was reversed by this Court. The Court did reach the blue and gold issue, which was raised as an alternative argument that the Government had presented in DRG. And the Court, this is all in the context of substantial justification, and I think a fair reading of DRG would be that the Court... Certainly, I will not say that the Court loved the Government's position on blue and gold in that case, but the Court did note, that I'll note on page 15 of the slip opinion in DRG, that there was at least one reasonable mind that came to the same view as the Government, and the Court cited Easterhill Boat Services, 91 fed claims, 43, and the Court quoted that the appeals court in blue and gold fleet could have allowed contractors to file agency-level protests to preserve their pre-award claims or to object to a manner other than by a filing suit in federal court. Instead, the Court ruled that a contractor wishing to object to the terms of the solicitation must file suit in the court of federal claims before the bidding process ends or not at all. And in this case, the facts of this case are very compelling for the application of blue and gold and the correctness of the CFC's application in this case, because clearly the CRA was aware of its concerns pre-award, clearly it articulated them to the Army, clearly the Army had not amended the RFP and it should have filed a protest at that time. But even assuming to the extent of a judgmental question, to the extent that the CRA contends that it learned additional information post-award, it has not, as the trial court correctly held below in footnote 9 of its opinion, which is at page 822, there's nothing very specific here, there's nothing that rises to the level of an OCI. And so regardless of the merits of its claim, it has not established any entitlement. In terms of the objections to the stop work orders and the alleged violation of the court of federal claims injunction, frankly the argument is a little bit confounding, because first of all it couldn't have prejudiced CRA in any way in the contract 12 competition. Essentially the Army was faced with having stopped work orders, which it received RFAs in response, and it reasonably decided that it wanted to negotiate with the contractor to resolve the contract 6, or it could have T4C'd and the government likely would have been subject to far more exposure under a T4C, because as the court knows, a T4C regulation, termination for convenience regulations, allows for reasonable profit. So there's no evidence on the record of this appeal to suggest that the way the Army handled the stop work orders in any way prejudiced CRA or that it resulted in any advantage to spectrum. In terms of the allegations of unfair discussions, CRA decided in response to the Army's request for resubmitted new proposals, it entirely redid its proposal, whereas spectrum submitted a revised proposal. And it's really difficult to have this exact parallelism. In terms of Section 1C issues, show that CRA and spectrum have significantly different proposals. I mean a lot of the information is confidential, so I can't get into detail, but the joint appendix page of this, this court compares page 1032 with 1051, there are significant differences in those proposals, and there is, as the trial court noted correctly below, there's no requirement for perfect parallelism. And then finally, to the extent that CRA challenges the professional compensation evaluation, which the trial court has set aside the original award, at page 832 the court makes it very clear that, unlike the first time the Army did conduct a complete comprehensive analysis, that was fully compliant with the FAR, and CRA in this appeal has not shown any error. So in order to, unless the court has any further questions, we respectfully request that the judgment below be affirmed. Thank you, Ms. McCarthy. We'll hear from Mr. Paster for spectrum health, the awardee. Thank you, Your Honor. Please, the court, I will, I have three minutes, so I will be brief. Well, you have two minutes. Do I get the balance?  Okay, thank you. Well, maybe I'll be a little less brief. My name is James Paster. I represent spectrum. I want to, I think the first point to clarify here is what the scope of blue and gold is, and as that case reads, the bottom line of it is that vendors cannot sit on their rights to challenge what they believe is an unfair solicitation, roll the dice and see if they receive war. The concept of an unfair solicitation is important. It's not merely talking about patent ambiguity. It is talking about unfairness in all its context, including ground rules to a competition, which are unfair, which potentially, arguably, prejudice one or favor one offer over another, which is exactly what we have here. Now we turn to the October 14th letter that Judge Wild referenced, and what they say there is that CRA hopes that the Army will account for an unfair technical and price advantage, and what do they cite to support the assertion of an unfair technical and price advantage? They cite on the technical side that there was information given to spectrum in the normal course of its transition about CRA and, well, meeting with the government, meeting with CRA, and they cite on the price side, they cite to the fact that they were paid for a transition to performing contract six during the pendency of the prior litigation. So those are the two things they're talking about when they talk about an unfair competition. Turn to their complaint and to how they argue this case at every stage of the Court of Federal Claims action, and the cause of action here was not an OCI argument here and a pricing argument here and an OCI argument here, I mean, separate, broken out. They have one cause of action which encompassed the entirety of this issue, and it was, and if I can read the title of it, it was the Army's evaluation was based on an unfair competition. The subsection was the Army failed to comply with the requirements of the FAR in addressing the OCI. A similar one about failed to comply with the principles of fairness in accounting for the pricing advantage. So what they were talking about was a concept of fairness in the ground rules of competition. On appeal, you wouldn't know that, because on appeal it's been treated as they were arguing separate, totally distinct arguments, but what actually was happening was it was a global challenge to the fairness and even-handedness of the procurement, including citing to basically aspirational FAR provisions such as FAR 1.602, which talked about treating offers equally and fairly. That was the issue that Judge Allegra was confronted with at the Court of Federal Claims. Did this RFP establish ground rules which were somehow unfair to CRA? And now I think another way to, it's helpful to understand what it is CRA is actually arguing here is thinking about remedy, which is an unusual thing to think about in the context of waiver, but I think it's actually instructive. What does CRA want at the end of the day? They're not saying spectrum should have been excluded for a conflict of interest, for example. They actually, I think, in their appellate brief specifically say that spectrum should be excluded. They specifically say that spectrum is eligible to compete. They say that at page 49 of their appellate brief. So this is not an issue of exclusion. What they're talking about is changing the way, getting information, sharing information. I think Mr. Wexner referred to it, we'd like to see that, what they did. We'd like to see their transition plan. We'd like something, the government to do something for us. Everything they wanted was something they would get in advance of submitting their proposal to help their proposal be better. That is a profoundly pre-award remedy they're looking for. Similarly, they say that they're not challenging the way pricing would be evaluated in the RFP. They're challenging the way pricing was evaluated. But what are they challenging? What in the RFP are they arguing that the government didn't comply with in failing to count the REAs or the transition payments made under a prior contract? The pricing language in the RFP is quite explicit. It says, we will evaluate prices for reasonableness and realism. This is a fixed price procurement, not a cost contract. Here's your number, that's what we're going to pay you. So in that context, a reasonableness analysis, as the Court of Federal Claims has held numerous times, and GAO has held for better than 30 years, a reasonableness analysis is, is your price too low? Well, obviously that's not the issue here because what they're saying is our price is artificially low. On the realism side, the only analysis that you do in a price realism as opposed to a cost realism or in a price context here, the only thing you do in price realism as guided by FAR Section 15-404-1D3 is, offered price is that you may look to establish the risk inherent in pricing which may bear on whether they can do the job proposed. And the specific quote at the end of that section is, offered prices shall not be adjusted as a result of a price realism analysis. In what universe, how are we getting to a point where the government should have taken a prior payment under a different contract and applied it to Spectrum's contract price? It's not clear what mechanism they could use to do that. There's nothing in the FAR which allows them, if they had done it, Spectrum would have been in court protesting it and saying that's an unlawful price adjustment that's not permitted in a fixed price procurement. So it's not clear and it's even more attenuated with the REAs because they weren't paid. Spectrum submitted three REAs prior to the court's contract six decision. These REAs were submitted in September of 2010 while still performing transition. The fact that the contract six was stopped essentially mooted those because Spectrum was required to submit a new proposal and the new proposal took those REAs and sort of accounted for whatever they wanted to account for when they were submitting their updated pricing. But the key point is not a single dollar of those REAs was paid prior to the award decision. And in fact, I don't actually know to this very day what the status of them are, but I know for a fact that not a dollar was paid as of the day of Judge Allegra's decision at the court of federal claim. So how is the Army supposed to penalize Spectrum for asking for money? I mean, what do they do? Do they take the money Spectrum asked for, assume they're going to get every dollar and just add it to their price? I mean, on what basis would they do that? What regulation or RFP provision would allow for that? There's nothing which does so. So I think that's all I have to say today. I think the key point here is that because what they're talking about is doing things to the pricing evaluation that were not allowed in the RFP, the only way the Army could have done that was to amend the RFP, which means this is precisely the kind of pre-award argument that this blue and gold compasses when it talks about unfair competition. CRA knew as of October 14, 2010, that it wanted transition costs to be included in the price evaluation. The RFP did not allow for transition prices to be included where they were not part of the price. Therefore, they were not evaluated. And if CRA has a problem with that, what they're saying is, I really have a problem with the RFP set. Thank you, Your Honor. Thank you, Mr. Feister. Mr. Weckstein, you used up most of your time. We'll give you three minutes to respond. Thank you, Your Honor. What the government and Spectrum are saying is that CRA, on October 14th or before, before our proposals were due at the end of October 2010, should have gone in and to the Court of Federal Claims and said, we protest that you gave Spectrum information about government furnished equipment that's different than information that you gave us in the RFP. We didn't know that until a year later. We couldn't protest that. We have no problem with the solicitation. We're not protesting the solicitation. We're protesting the actions and inactions that occurred after the proposals were submitted. On the money issue, the government, after proposals were due, took action that subjected it to liability. They took action that violated the injunction. They took action that put Spectrum in a position to say, government, we're hanging around here on this Contract 6, which you have not terminated even though the court said to do it. And while we're hanging around, we are entitled to money. We're entitled to money for maybe leases we have, maybe for key personnel. All those things we're going to need to be in the position to perform Contract 12. You're on the hook for that. And it's a real good argument. And Spectrum would not have been able to make that argument and have submitted that REA unless the Army had violated that injunction. And Spectrum thought it was a good argument because they put in that request for the REA that gives them that entitlement that gave them that competitive advantage in performing the contract. It's not an advantage of incumbency. Yeah, if they're an incumbent and you get proper advantage of incumbency, there's nothing the matter with that. But a decision in ARINC Engineering, 77 Fed Claim at 196 on page 203, says an incumbent doesn't get advantages that are improper. That incumbency doesn't open the door to just violate everything. So Mr. Rickson, before you wrap up, Mr. Pasteur raised a question. He has it in his brief too at page 42. He says CRA has never explained exactly what it believes the remedy would be for its OCI concerns. And he said that again in oral arguments. I wanted to give you a chance to answer that. We weren't properly evaluated. So it can be sent back to say court, Army, determine whether there was an RCA. Because that's a determination that this court can't make, that I can't make, that the Army attorney can't make. And that's under FAR 9.505. It says the Army has to make it. They never did. So make that determination. Give discussions to CRA, equal discussions, and let them submit a revised proposal. Evaluate 1.C properly. Go back and do it right, and then see what the result is. That's one thing. This has been hanging around for a long time. It could be that you messed up the second time, you had a chance, you violated that first injunction. Stop. This is over, and Army, you figure out how you're going to get this done. Don't exercise options. Don't continue this contract. So there are various remedies here that can deal with this. Thank you, Mr. Weinstein. In case you'll be taken under advisement. Thank you. All rise.